## No. 706.

### W. A. RANSOM & Co. vs. SCHEEN & BRADLEY.

Country merchants, drawing on their city factors in whose hands they had funds, with whom their business relations were such as authorized them to draw with good reason to expect and believe that their drafts would be honored, and who to make payment certain, shipped cotton more than sufficient to cover the drafts after drawing them, are entitled to have their drafts promptly presented, demand of payment made, and in case of refusal notice thereof given by next day's mail.

In such cases there must be presentment, demand of payment, and notice of dishonor in writing to charge the drawers.

A promise to pay a dishonored bill, in order to bind the promissor, must be made with full knowledge that he has been discharged by the laches of the holder.

APPEAL from the District Court for Bienville. TRIMBLE, J.

*L. B. Watkins* for Plaintiff. *Egan* and *J. S. Young* for Defendant.

MARR, J. Defendants are appellants from a judgment against them as drawers, in favor of plaintiffs, payees, of two drafts or bills of exchange drawn at Sparta, Louisiana, on W. Morrison & Co., of New Orleans, both dated 2nd of February, 1874 one at sight, the other at sixty days after date.

The bills were not protested, and plaintiffs base their right to recover on the following allegations in their petition.

That these two bills were presented to drawers in due season, for payment and were neither accepted nor paid, they, the drawees, stating that the drawers had not placed them in funds, that they had no funds in hand and that the defendants had no right to draw.

That immediately after the bills had been presented and dishonored, plaintiffs gave the drawers notice "in due course of telegram and mail, and from them received acknowledgment and a promise to pay said dishonored bills." The defendants in their answer, deny liability on the bills. They allege that they were not presented for acceptance and payment, and no notice of non-acceptance and nonpayment was given to them in a reasonable time.

That they had large transactions with the drawees, who were their commission merchants; that they shipped them large quantities of

cotton, and they had a right to expect these drafts to be accepted and paid.

That they had funds and property in hands of the drawees; and actually shipped to them sixty bales of cotton, to meet this very debt; and that by the negligence of plaintiffs in not making demand of the drawees, and not notifying defendants of the non-payment in a reasonable time, they have lost more by the failure of the drawees, than the amount of the drafts sued on.

The proof shows that these two bills were drawn and were delivered at Sparta, to one Kerrigan, agent of plaintiffs in settlement of a pre-existing debt past due; Kerrigan either took these bills with him, or sent them to plaintiffs, at the city of New York.

At any rate, between the 12th and 16th of February, 1874, they were in possession of plaintiffs.

On the 10th of February, Morrison & Co. sent a telegram which plaintiffs received in New York, Wednesday, as follows: —

" Scheen & Bradley have drawn sight in your favor, we cannot pay at present."

The next day Morrison & Co. wrote to plaintiffs saying they had a letter from Scheen & Bradley, advising of the drawing in favor of plaintiffs. That Scheen & Bradley wished them to dispatch plaintiffs in case they could not honor the drafts; and they add " we cannot pay their drafts until they place us in funds, we have nothing in hand to pay a sight draft."

On the 12th of February, Morrison & Co. sent another telegram to plaintiffs as follows: " No funds. Cannot fix time for payment without seeing drawers."

On the same day, February 12th, plaintiffs wrote to Scheen & Bradley informing them of telegram from Morrison & Co., and requested Scheen & Bradley to send them cotton to pay the bills, care John Phelps & Co., New Orleans.

On February 24th — Scheen & Bradley answer, acknowledging receipt of this letter.

They express their regret that the bills were not paid; allege their good faith in drawing them, and say they shipped sixty bales of cotton to make the payment sure, but heard shortly after that Morrison & Co. had suspended. " Had we expected anything of the kind should

certainly have sent you the cotton. We shall try and get cotton to send to Messrs. Phelps & Co., N. O., if possible."

On February 16th, plaintiffs write Morrison & Co., saying at the time they received the telegram, February 11th, they had no advices about the bills in question; that they had since received them; and had sent them to John Phelps & Co. for collection.

It is not shewn at what time Phelps & Co. received their bills; they handed them to their runner, who went out to collect them. He says: "I found that W. Morrison & Co. had suspended, and so reported to John Phelps & Co., who so wrote to plaintiffs, returning them the drafts."

It is proven that the bills were returned to plaintiffs by Phelps & Co. on the 19th of February, and on the 24th of February, plaintiffs inform defendants, by letter, that the bills had been returned to them unpaid and unaccepted.

Bradley testified on the trial and proved the statements in the answer. He states that the transactions between Morrison & Co. and Scheen & Bradley had been large; that they had been authorized to draw; that sometimes the balance was in their favour, sometimes against them: "At date, February 2, 1874, we had funds in the hands of W. Morrison & Co., and expected that our drafts would be paid. Morrison & Co. were indebted to us a considerable amount at the time they suspended. At the time the letter was written, February 24, 1874, to W. A. Ransom & Co., I had no knowledge that a demand had not been made on Morrison & Co. for the payment of the drafts sued on."

On cross-examination, he says he does not know whether demand had been made on Morrison & Co. or not; and he adds: "After the drafts were drawn we shipped cotton to W. Morrison & Co. to pay them."

H. F. Scheen, who seems to have been a clerk for Scheen & Bradley, corroborates the testimony of Bradley; and he adds: "I know they (Scheen & Bradley) shipped W. Morrison & Co., of New Orleans, sixty bales of cotton to pay drafts sued on after they were drawn."

The testimony of Morrison, of Phelps & Co., of their runner, and of the members of the firm of W. A. Ransom & Co., and their clerks, was taken and the telegrams and letters to which we have referred were

also offered in evidence. Kerrigan says he went to Sparta to make settlement with Scheen & Bradley; and that he would not have accepted the drafts, but for the promise of Scheen & Bradley to send to Morrison & Co., to meet the sight drafts for $726.43, $750 in gold, the price of some property sold by Scheen over due two days.

Manifestly it is not proven that the bills were presented to Morrison & Co.; and it could have been proven only by Morrison & Co. and the runner of Phelps & Co.

Morrison says nothing on the subject; and it is evident that the runner of Phelps & Co. thought, when he found that Morrison & Co. had suspended, that presentment and demand of payment were not necessary.

No one contradicts or attempts to contradict Bradley's testimony. He proves important business connections with Morrison & Co. authority to draw, a running account between Scheen & Bradley and Morrison & Co , funds in the hands of Morrison & Co. at the time the bills were due, and a subsequent large shipment to make the payment sure. No. fact stated by Bradley is disproved; his testimony is in accordance with the letter to Ransom & Co. of February 24, 1874, and the answer filed May 17, 1876; and we must accept it as true.

The case we have to deal with, therefore, is that of country merchants drawing on their city factors, in whose hands they had funds, with whom their business relations were such as authorized them to draw, with good reason to expect and believe that their drafts would be honored, and who, to make payment certain, beyond doubt, shipped property, after drawing, more than sufficient to cover their drafts. We think that lawyers and business men generally would concur in saying that under such circumstances the drawers were entitled to have their bills promptly presented, demand of payment made, and notice given by next day's mail, in case of refusal. The bills were domestic and might have been presented by Phelps & Co., or their runner; and in case of refusal to pay or accept, notice might have been given by the person who made the demand.

In all such cases, however, there must be presentment, demand of payment, and notice of dishonor, in writing, to charge the drawer. See French *v.* Bank of Columbia, 4 Cranch, 156; Bloodgood *v.* Hawthorn, 9 La. 127; Williams *v.* Brashear, 19 La. 371.

Ransom & Co. *vs.* Scheen & Bradley.

The telegrams and letters offered in evidence were objected to by defendant's counsel; and we think they should not have been received for any other purpose than to prove *rem ipsam*, that such telegrams and letters were received.

They afford no proof whatever against defendants of the truth of any statement they contain. Morrison's depositions were taken in behalf of plaintiffs; and he did not attempt to prove the truth of his telegrams or his letters.

On the 12th of February plaintiffs advised Scheen & Bradley that Morrison & Co. had informed them that they could not pay the bills without funds; but the bills had not then reached New York, and they had not been presented nor had any demand of payment been made.

The bills were delivered to Kerrigan, the agent of the plaintiffs, on the day of their date; and we cannot imagine why they were sent to New York. It seems to us they should have been sent directly to New Orleans and presented to Morrison & Co.; and if dishonored, notice should have been given Scheen & Bradley. In that event they would not have shipped the sixty bales of cotton to Morrison & Co.; and they might have taken prompt measures to withdraw any funds or property they might have had in the hands of Morrison & Co.

The suspension of Morrison & Co. became a bankruptcy soon after, that is, in May, and no doubt their embarrassment prompted the telegrams to the plaintiffs.

When the bills finally reached New Orleans by way of New York, the agents of plaintiff, did not present them, did not demand payment, did not give notice to Scheen & Bradley; and they were notified by letter of February 24th, not that the bills had been presented and payment demanded, but that they had been returned unpaid and unaccepted.

This seems to us inexcusable negligence; and the letters of plaintiffs to defendants in no manner supply the want of presentment, demand, and notice.

The letter of defendants to plaintiffs, of February 24, 1874, contains no promise to pay these bills. It is settled that a promise to pay a dishonored bill, must be made with full knowledge that the party promising has been discharged by the laches of the holder. But Scheen & Bradley did not know at the date of this letter, and Bradley swears he did not know, in December, 1876, when he testified

on the trial, that the bills had not been presented and that demand had not been made. If their letter of February 24th had contained a promise to pay without knowledge on their part that the steps necessary to charge them had not been taken, they would not have been bound.

The only promise made in the letter is: " We will try and get cotton to send to Messrs. Phelps. & Co., New Orleans, if possible."

This does suffice to charge defendants as drawers of the bills ; nor does it enforce any pecuniary liability.

The judgment appealed from is not supported by the evidence, but we shall not conclude defendants finally by our decree.

*Judgment reversed and in favor of defendants as of non-suit.*